618 P.2d 586

The STATE of Arizona, Appellee,

v.

Michael James MULALLEY, Appellant.

No. 4750.

Supreme Court of the State of Arizona,
In Banc.

Sept. 11, 1980.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, and Gerald R. Grant, Asst. Attys. Gen., Phoenix, for appellee.

J. Douglas McVay, Phoenix, for appellant.

CAMERON, Justice.

On 23 July 1979, defendant Michael James Mulalley was convicted by a jury of two violations of A.R.S. § 13–1206, dangerous or deadly assault by a prisoner. Immediately after the guilty verdicts, the trial court followed the mandatory sentencing provision of A.R.S. § 13–1206 and sentenced Mulalley to two life terms. As required by the statute, these sentences were made to run consecutively to each other and to all other sentences the defendant was then serving. Mulalley now appeals both conviction and sentence. We have jurisdiction pursuant to A.R.S. § 13–4031.

The defendant raises three issues on appeal:

1. Did the trial court err in refusing to grant defendant's motion for mistrial on the basis of the inadmissibility of evidence of the charge for which the defendant was being tried at the trial in which the assault occurred?

2. Was the sentence imposed upon the defendant cruel and unusual, in violation of the Eighth Amendment of the United States Constitution and Article 2, Section 15 of the Arizona Constitution?

3. Does A.R.S. § 13–1206 violate the equal protection clause of the Fourteenth Amendment to the Constitution of the United States?

The following facts are necessary to a resolution of these issues. On 23 January 1979, some six months prior to trial in the instant case, Mulalley was on trial in Maricopa County Superior Court for an unrelated felony. Shortly after a guilty verdict was pronounced, the defendant, who had been seated with his lawyer at a table in front of the judge's bench, jumped up from this table and ran toward an exit door behind the bench. Deputy Sheriff Nibouar, who had been seated behind the defendant and his lawyer, immediately pursued Mulalley. The defendant grabbed Court Clerk Cari Faust by the hair and pulled her out of her chair and onto the floor. With his other hand, Mulalley groped among the papers on Faust's desk, where he found a pair of heavy, pointed desk scissors. He brandished the scissors at Nibouar. Nibouar backstepped to avoid being hit, tripped, and fell. When he recovered his footing, Nibouar faced Mulalley, who threatened to harm Faust if Nibouar came nearer. Nibouar jumped Mulalley, disarmed him and flattened him over Faust's desk. She moved away, and, with the assistance of two jurors and a county attorney, Deputy Nibouar restrained Mulalley in leg irons and handcuffs. In the scuffle, Nibouar suffered a small wound in the web of his hand which did not require medical attention. Clerk

Faust's wounds consisted of scratches on her face, small cuts on her left forearm, and bruises on her back.

At Mulalley's trial on the charge of dangerous assault by a prisoner, the State called as witnesses Deputy Nibouar, Clerk Faust, jurors James Sears and J. M. Bennett, and Deputy County Attorney Michael Donovan. All of these witnesses had personally observed or had been involved in the events which formed the basis for the charge. In addition, the State introduced photographic evidence of Nibouar's and Faust's injuries and the scissors Mulalley seized from Faust's desk. From jury verdicts and judgments of guilt and sentencing thereon, Mulalley appeals.

## DENIAL OF MISTRIAL

Through the testimony of Nibouar, Faust, Sears, and Donovan, the State established that the alleged assault had taken place while Mulalley was in court for trial on some unspecified criminal charge. During direct examination of the last prosecution witness, J. M. Bennett, the jury heard the following testimony:

"Q Directing your attention to January 23 of this year, at that time were you serving as a juror in Maricopa County Superior Court?

"A Yes, I was.

"Q Do you recall where you were on that date in your juror duties, where you were located in the court building?

"A Yes, I was in the fifth seat from the back row.

"Q Do you recall where that courtroom was?

"A Yes. It was on this wing on the far side.

"Q At that time in your juror duties, could you tell us what type of proceedings you were involved in?

"A There was a rape case, assault and battery.

"Q Do you recall the name of the person who was involved in that trial?

"A Yes, I do.

"Q Could you tell us what that name was, please?

"A Michael James Mulalley."

Following this testimony, the defense made a motion for mistrial, out of the jury's hearing. Both the defense and the court clearly accepted the prosecutor's avowal that he had not intended for Bennett to refer to the crimes for which Mulalley was on trial in January. After a recess to consider the defense motion, the trial court ruled that Bennett's testimony concerning the nature of the January charges was inadmissible. The court ordered the testimony stricken from the record and instructed the jury to disregard Bennett's comments "with regard to what the charges were or the crimes were that were involved in the previous trial." The court denied the defense motion for a mistrial.

The defendant argues that reference to the nature of the crimes for which he was being tried in January was so prejudicial that it necessitated a mistrial. The State argues that the reference was admissible and therefore could not serve as grounds for mistrial.

■ We agree with the trial court that testimony concerning the charge for which the defendant was previously tried was error. *State v. Tuell*, 112 Ariz. 340, 541 P.2d 1142 (1975); *State v. Moore*, 108 Ariz. 215, 495 P.2d 445 (1972). It was proper to inform the jury that the assault was committed while the defendant was in court for another offense. A recognized exception to the general rule that evidence of other crimes is not admissible in the trial of a separate and distinct crime is the "complete story exception." *State v. Myers*, 117 Ariz. 79, 570 P.2d 1252 (1977). The jury does not need to know, however, the nature of the offense. In the instant case, the jury could have decided that he was a rapist and have convicted him for the crime charged on lesser evidence than they might normally require. The trial court was correct in striking the comment and instructing the jury to disregard it. *State v. Greer*, 118 Ariz. 349, 576 P.2d 1004 (App.1978).

We believe, however, that even if we were to hold that the error was not cured by the trial court's striking of the evidence and instructing the jury to disregard the statement, we need not reverse. Given the overwhelming and uncontroverted evidence against the defendant, we find that the error was not prejudicial and that the jury, beyond a reasonable doubt, would still have found the defendant guilty even if the prejudicial testimony had not been heard. Although we find error, we do not need to reverse. *State v. Sustaita*, 119 Ariz. 583, 583 P.2d 239 (1978).

## CRUEL AND UNUSUAL PUNISHMENT

The defendant challenges the constitutionality of A.R.S. § 13–1206 on the grounds that the statute mandates a cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the Constitution of the United States and Article 2, Section 15 of the Arizona Constitution.

Our statute reads:

"Dangerous or deadly assault by prisoner

"A person, while in the custody of the department of corrections, a law enforcement agency or county or city jail, who commits an assault using or exhibiting a deadly weapon or dangerous instrument or who intentionally or knowingly inflicts serious physical injury upon another person is guilty of a felony and upon conviction shall be sentenced to life imprisonment and shall not be eligible for suspension or commutation of sentence, probation, parole or release on any other basis until such person has served not less than twenty–five years. A sentence imposed pursuant to this section shall be consecutive to any other sentence presently being served or imposed upon the defendant." A.R.S. § 13–1206.

■ Courts first look to the statute in determining whether a sentence is excessive. It has been stated, as to sentencing, the

"function of the legislature is primary, its exercise fortified by presumptions of right and legality, and is not to be interfered with lightly, nor by any judicial

conception of * * * wisdom or propriety." *Weems v. United States*, 217 U.S. 349, 379, 30 S.Ct. 544, 554, 54 L.Ed. 793, 803 (1910).

This principle of judicial restraint means that, in the vast majority of cases, we will not disturb a sentence which is within the statutory limits. See, e. g., *State v. Pacheco*, 121 Ariz. 88, 588 P.2d 830 (1978); *McKellar v. Arizona State Department of Corrections*, 115 Ariz. 591, 566 P.2d 1337 (1977); *State v. Stadie*, 112 Ariz. 196, 540 P.2d 668 (1975), cert. den. 425 U.S. 974, 96 S.Ct. 2174, 48 L.Ed.2d 798 (1977). See also *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980).

■ The fact that a sentence is prescribed by statute, however, "does not conclusively establish the punishment's constitutionality, for the Eighth Amendment is a limitation on both legislative and judicial action." *Ralph v. Warden*, 438 F.2d 786, 788–89 (4th Cir. 1970), cert. den. 408 U.S. 942, 92 S.Ct. 2846, 33 L.Ed.2d 766 (1972). We have said that this court might

"find a particular penalty so severe as to shock the conscience of society and require a holding that it violates the constitutional mandate. Such holdings will have to be made on a case–by–case approach which will conform to the general mores of society at the time of the decisions." *State v. Davis*, 108 Ariz. 335, 337, 498 P.2d 202, 204 (1972). See also, *Trop v. Dulles*, 356 U.S. 86, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958).

■ As *Davis*, supra, suggests, in order to find a statutorily mandated sentence cruel and unusual, we must determine, not whether it offends our own perceptions of decency, but whether it offends those of contemporary society. See *Downey v. Perini*, 518 F.2d 1288 (6th Cir.) vacated mem. 423 U.S. 993, 96 S.Ct. 419, 46 L.Ed.2d 367 (1975). "[T]he moral sense of the community" may be shocked when a punishment is overly severe or otherwise not "proportionate to the type of crime." *State v. Taylor*, 82 Ariz. 289, 294, 312 P.2d 162, 166 (1957). Accord, *United States v. Washington*, 578

F.2d 256 (9th Cir. 1978); *State v. Frietas*, —— Haw. ——, 602 P.2d 914 (1979); *Norris v. State*, Ind., 394 N.E.2d 144 (1979); *Workman v. Commonwealth*, 429 S.W.2d 374 (Ky. 1968); *Commonwealth v. Jackson*, 369 Mass. 904, 344 N.E.2d 166 (1976).

■ In evaluating the proportionality of a criminal sanction, we will consider not only the nature of the crime and of the offender, *Hart v. Coiner*, 483 F.2d 136 (4th Cir. 1973), cert. den. 415 U.S. 938, 94 S.Ct. 1454, 39 L.Ed.2d 495 (1974); *In re Lynch*, 8 Cal.3d 410, 503 P.2d 921, 105 Cal.Rptr. 217 (1972); *People v. Broadie*, 37 N.Y.2d 100, 332 N.E.2d 338, 371 N.Y.S.2d 471 (1975), but we will compare it with punishments for the same crime in other jurisdictions and for other crimes within our own jurisdiction. Because the "enactments of legislative bodies * * * serve as some index of community standards and values," *Carmona v. Ward*, 436 F.Supp. 1153, 1165 (S.D. N.Y.1977), rev'd on other grounds, 576 F.2d 405 (2nd Cir. 1978), cert. den. 439 U.S. 1091, 99 S.Ct. 874, 59 L.Ed.2d 58 (1979), they help give objective content to the "conscience of society." In comparing the sentence actually imposed with sanctions provided in other jurisdictions, we do not, of course, seek to conform our statutes "to the 'majority rule' or the least common denominator of penalties nationwide." *People v. Williams*, 101 Cal.App.3d 711, 724, 161 Cal.Rptr. 830, 837 (1980). See also *Rummel v. Estelle*, supra. Rather we seek evidence of what sanctions are currently considered acceptable in our society for the crime committed.

Our survey of other jurisdictions shows that five states would mandate a life sentence upon conviction for the assault at issue here; Colorado, one of the five, would require that the sentence be served consecutively and without parole. We note mandatoriness does not in itself constitute cruel and unusual punishment, where the term given is not unacceptably disproportionate. *United States v. Chow*, 398 F.2d 596 (2nd Cir. 1968); *State v. Williams*, 115 Ariz. 288, 564 P.2d 1255 (App.1977); *Commonwealth v. Jackson*, supra. Six more states authorize a maximum life sentence. Nebraska provides a 50 year maximum; Mississippi, a 30 year maximum; and Rhode Island, a 25 year maximum. Georgia mandates 20 years without parole, and Oklahoma mandates the same term, with parole a possibility.

■ Thus, while the life sentences required by A.R.S. § 13–1206 would not be imposed in a majority of jurisdictions, it is considered proportionate in at least a dozen states. We do not believe that the sanction applied to Mulalley was so disproportionate as to shock "the general mores of society." *State v. Davis*, supra, 108 Ariz. at 337, 498 P.2d at 204.

Our survey of this state's criminal code shows that our legislature has provided a mandatory life sentence for only two crimes: the form of assault of which Mulalley was convicted, A.R.S. § 13–1206, and first degree murder, A.R.S. § 13–703. While the life term for murder is imposed without possibility of parole for twenty–five years, A.R.S. § 13–703, it may be less severe than that mandated by A.R.S. § 13–1206, because it may be commuted and because it may be served concurrently. A.R.S. § 13–1206 requires that sentences pursuant to that section be served consecutively, and it precludes commutation.

It also appears that a number of crimes that appear to us to be similar in gravity to dangerous assault by a prisoner are punished substantially less severely by our criminal code. Thus, Class 2 felonies for which the presumptive sentence is seven years and the range of permissible sentences is 5.25 to 14 years, A.R.S. § 13–701, include the following: second degree murder, A.R.S. § 13–1104; kidnapping, A.R.S. § 13–1304; sexual assault (rape), A.R.S. § 13–1406; first degree burglary (deadly weapon), A.R.S. § 13–1508; arson of an occupied structure, A.R.S. § 13–1704; and armed robbery, A.R.S. § 13–1904, and if A.R.S. § 13–1206 did not exist, Mulalley could have been sentenced within a range of 20–40 years, two–thirds of the sentence to be served before he could be eligible for release on any basis. This range is based on the legislated punishment for aggravated

assault, A.R.S. § 13–1204, enhanced by the dangerous and repetitive offender provision, A.R.S. § 13–604.

While it is true that A.R.S. § 13–1206 mandates the most severe prison sentence available in our criminal code, that no other conduct not involving homicide requires a life sentence and equally grave crimes are punished less severely, and that a substantially similar and possibly more dangerous crime is punished much less severely, it does not follow that A.R.S. § 13–1206 violates the federal and state constitutions. Disproportionality

> "is, of course, a question of degree. The choice of fitting and proper penalties is not an exact science, but a legislative skill involving an appraisal of the evils to be corrected, the weighing of practical alternatives, consideration of relevant policy factors, and responsiveness to the public will; in appropriate cases, some leeway for experimentation may also be permissible. The judiciary, accordingly, should not interfere in this process unless a statute prescribes a penalty 'out of all proportion to the offense.'" *In re Lynch*, supra, 8 Cal.3d at 423–24, 503 P.2d at 930, 105 Cal.Rptr. at 226.

Considering the gravity of the offense proscribed in A.R.S. § 13–1206, and the severity with which a number of our sister states would punish one in the defendant's situation, we find that the life sentence mandated by the statute is not so disproportionate as to violate the prohibitions against cruel and unusual punishment in our state and federal constitutions.

We note, however, that the judge sentenced the defendant to two terms of life imprisonment to be served consecutively. Our general "enhancement statute" states:

> "Convictions for two or more offenses not committed on the same occasion but consolidated for trial purposes, may, at the discretion of the state, be counted as prior convictions for purposes of this section. Convictions for two or more offenses committed on the same occasion shall be counted as only one conviction for purposes of this section." A.R.S. § 13–604(H).

■ Were these separate offenses occurring at different times, we would hold that the court was correct in sentencing the defendant to two consecutive life sentences. While admittedly not strictly on point, we believe that A.R.S. § 13–604(H) indicates the intention of the legislature that "spree offenders" are to be treated differently. We believe the trial court erred in its belief that the two life sentences, based upon two crimes "committed upon the same occasion," had to be consecutive. The defendant will therefore have to be resentenced to two life sentences to be served concurrently but consecutive to any other sentences imposed.

## EQUAL PROTECTION

The defendant also argues that A.R.S. § 13–1206 violates the equal protection of the laws guaranteed him by the Fourteenth Amendment to the United States Constitution because it arbitrarily mandates a life sentence for a class of persons which the state has no rational basis to differentiate from other lawbreakers.

The class defined by the statute is made up of persons who commit dangerous or deadly assaults while in custody. In order to invalidate this legislative classification, we must find that it bears no rational relationship to a legitimate purpose. *Marshall v. United States*, 414 U.S. 417, 94 S.Ct. 700, 38 L.Ed.2d 618 (1974). See also *State v. Gray*, 122 Ariz. 445, 595 P.2d 990 (1979).

■ The state certainly has a legitimate interest in protecting others, including persons who are employed or incarcerated by law enforcement and corrections agencies, from dangerous assaults by those in custody. It is not irrational to believe that this type of conduct should be severely punished. Such beliefs have prompted legislatures to provide extra penalties for violent crimes committed by those in custody. *People v. Gardner*, 56 Cal.App.3d 91, 128 Cal. Rptr. 101 (1976). We find that A.R.S. § 13–1206 does not violate the defendant's Fourteenth Amendment equal protection rights by being arbitrary or capricious.

The defendant's convictions are hereby affirmed, and the matter is remanded for resentencing within 60 days from the issuance of the mandate in this case and in accordance with this opinion.

STRUCKMEYER, C. J., HOLOHAN, V. C. J., and HAYS and GORDON, JJ., concur.