792 P.2d 692

**STATE of Arizona, Appellee,**

v.

**Joseph BARTLETT, Jr., Appellant.**

**No. CR–88–0411–PR.**

Supreme Court of Arizona,
En Banc.

April 17, 1990.

Robert K. Corbin, Atty. Gen. by Bruce M. Ferg, Asst. Atty. Gen., Tucson, Vicki Gotkin Adler, Asst. Atty. Gen., Phoenix, for appellee.

David P. Flannigan, Bisbee, for appellant.

Robert F. Arentz, Cochise County Public Defender by James L. Conlogue, Deputy Public Defender, Bisbee, amicus curiae for Cochise County Public Defender.

Harrison, Harper, Christian & Dichter, P.C. by Stephen M. Dichter, Phoenix, amicus curiae for Arizona Attys. for Criminal Justice.

OPINION

CORCORAN, Justice.

Defendant Joseph Bartlett, Jr. (defendant) petitions for review of the court of appeals decision affirming his convictions for two counts of sexual conduct with a minor under 15 years of age, class 2 felonies and dangerous crimes against children, and the resulting mandatory minimum consecutive sentences totalling 40 years without possibility of early release. We granted review to determine whether these sentences constitute cruel and unusual punishment and ordered the parties to submit supplemental briefing addressing the following questions:

1. Under the facts of this case, is the mandatory sentence required by A.R.S. § 13–604.01 so disproportionately severe that it violates those provisions of the state and federal constitutions that prohibit cruel and unusual punishment?

2. If the mandatory sentence prescribed by the applicable statute is unconstitutional as applied to the facts of the crime, what is the proper disposition?

We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), and A.R.S. § 12–120.24. For the reasons that follow, we hold that the sentences imposed are disproportionate to defendant's crimes under the analysis required by *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), and thus were unconstitutionally imposed. We therefore remand the matter for resentencing.

## FACTUAL AND PROCEDURAL BACKGROUND

In September 1986, defendant, then 23 years old, was introduced through a mutual friend to a 9th grade student whom we shall call Mary,[1] then 14½ years old. Defendant and Mary saw each other every day in September, October, and November 1986, dated occasionally, and, according to

Mary, considered themselves "boyfriend and girlfriend." In December 1986 Mary ran away from her father's home, where she had been living, and stayed with defendant for 4 days before moving back to her mother's home. Mary testified that she and defendant became physically intimate sometime in December 1986, when she voluntarily had sexual intercourse with him. At that time, Mary was two months short of her 15th birthday.

During the fall of 1986, Mary introduced defendant to her 14½–year–old friend, whom we shall call Susan. Defendant lived in the same trailer park as Susan, and Susan often ate lunch with Mary and defendant at the parking lot across the street from the high school that Mary and Susan attended. Susan testified that defendant did not act like he was 23, but was "immature" in that he behaved like and associated with young teenagers. In early December 1986, Susan went to defendant's home and voluntarily had sexual intercourse with him; at the time, Susan was 6 months short of her 15th birthday.

Mary terminated her relationship with defendant around March 1987, when he admitted to "messing around" with some of her friends. Susan did not continue her sexual relationship with defendant after the initial incident.

In January 1987, police responded to a report of an accidental discharge of a weapon at defendant's trailer park when Susan's mother went looking for defendant after learning of her daughter's sexual encounter with him. The officers confiscated the weapon. The mother filed a complaint, alleging that defendant had forcibly sexually assaulted her 14–year–old daughter. When defendant heard from neighbors that police had inquired about him at the trailer park, he voluntarily went to the police station to find out why they were looking for him. Officer Robert Pearce invited defen-

---

1. We will use fictitious names for the two teenage girls involved in this case. This is in accordance with our policy of October 24, 1989, in which the Chief Justice advised all appellate judges "to avoid, where possible, referring by name in appellate opinions to individual victims or witnesses who are minors or victims of crimes, where naming them would cause them danger or unnecessary embarrassment. Referring by name should occur only where it is absolutely necessary for clarity."

dant into his back office to talk, and informed defendant that the girl's mother had reported his forcible sexual assault of the 14–year–old. Defendant denied the mother's accusation and told Officer Pearce that he and Susan had consensual intercourse on one occasion, which he alleged was initiated by Susan when she came to his home. The officer also asked about defendant's relationship with Mary; defendant admitted that he had consensual sexual intercourse with Mary while they were dating. Officer Pearce taped most of defendant's statements but did not arrest defendant after the interview.

Susan later recanted the account of forcible sexual assault that she had told her mother and admitted that she and defendant had consensual sexual intercourse. Based on the evidence that defendant had sexual intercourse with two 14–year–old girls, he was charged with two counts of sexual conduct with a minor under the age of 15 years, class 2 felonies, and dangerous crimes against children.[2] The state also filed a motion to invoke enhanced punishment by treating a conviction on one count as a prior conviction for purposes of enhancing the other, pursuant to A.R.S. § 13–604(H). *See* A.R.S. § 13–604.01(A), (H).

Defendant pleaded not guilty[3] but did not appear at trial. Both Mary and Susan testified that their sexual conduct with defendant was consensual and that defendant knew each of them was 14 years old. Officer Pearce testified that, during the interview at the police station, defendant had admitted to consensual sexual intercourse with both girls and acknowledged he was aware of their ages. The jury found defendant guilty of two counts of sexual conduct with a minor under 15 years old. The court ordered preparation of a presentence report.

The presentence report indicated that, while on release awaiting trial, defendant voluntarily sought outpatient counseling. His counselor indicated that defendant visited her only once; she "suspected that he feels 'intimidated' by women in his own age group and that this is why he is attracted to younger girls." She also indicated her impression that defendant was "immature for his age."

The report also noted that defendant was married but separated pending a divorce, that his wife was living in Nevada with their 3 small children, and that he had no prior felony convictions. The presentence evaluation included the following analysis and recommendation:

A reasonably intelligent individual, Bartlett's attraction to young girls may very well be a sign of inferiority around women his own age. Further, the description of his early sexual experiences may indicate a long term deep [seated] problem with women and sex. His justification for his sexual conduct seems to rest with the "loose" character of the female involved, regardless of their age. He tends to relinquish any responsibility on his part by appearing to be a passive participant in all of his sexual encounters.

. . . .

Overall, he appears to be an irresponsible and immature 24 year old man who may continue to present a threat to young girls. His lack of any prior felonies coupled with the seriousness of the offenses, may indicate that the presumptive term in [the Department of Corrections] is appropriate.

At sentencing, the court imposed the *minimum mandatory* sentence on *each* count: 15 years for the first count as a nonrepetitive dangerous crime against children, and 25 years on the second count as a

---

**2.** Defendant was also charged with a third count of sexual conduct with a minor aged 15 years, a class 6 felony, involving a third teenager. However, the jury acquitted him of that charge at trial, and the circumstances involving that incident are not relevant to this review.

**3.** The record indicates that defendant, against his counsel's advice, rejected the state's offer of a stipulated 5–year sentence for all 3 counts if defendant would enter an agreement to plead guilty. Had the offer been accepted, the state apparently would have amended and reduced the charges to make a 5–year sentence statutorily available.

repetitive dangerous crime against children, to be served *consecutively* without any possibility of early release. *See generally* A.R.S. § 13–604.01. The court expressed its regret at having to impose such a harsh sentence in the following remarks at sentencing:

> THE COURT: Well, I have very little choice in this regard, to put it mildly. The law in Arizona in connection with an offense of this nature is very stringent. As I have reviewed the law and is indicated in the pre-sentence report, the law provides for a very severe presumptive term on each of the counts. The law also provides that each day of the sentence must be served. The law also provides that the sentences must be consecutive, and the law also provides that the subsequent offense is subject to a more severe presumptive term.
>
> My function, as I view it, is not to second guess the legislature in regard to sentencing, but to follow the law. I took an oath to do that. The law is very severe.... The punishment is more severe than in many other types of cases that are very serious offenses. But it is not my function to second guess what the wisdom of the sentence is.
>
> If in fact the sentence is too severe, I think that's for the appellate courts to review. So I really have nothing else to say in regard to the sentencing. I'm going to impose the mitigated term, because I think that it is plenty severe in the case.

The court credited defendant with 88 days of presentence incarceration and ordered him to pay $100 to the victim's compensation fund. Defendant timely appealed. The court of appeals affirmed defendant's convictions and sentences and defendant sought review in this court.

## THE COURT OF APPEALS DECISION

Defendant argued on appeal that his confession was involuntary and that his sentence was cruel and unusual. The court of appeals first concluded that the confession was voluntary; that holding is not at issue in this review. In the remaining one-paragraph analysis, the court affirmed defendant's sentence:

> Defendant's argument that the long sentence imposed for sexual conduct with a minor violates the constitutional proscription against cruel and unusual punishment has been twice rejected by this court. *State v. Smith*, 156 Ariz. 518, 753 P.2d 1174 (App.1987); *State v. Crego*, 154 Ariz. 278, 742 P.2d 289 (App. 1987). We do so again. The remainder of his argument is a heartfelt objection to the consequences of mandatory sentencing on the facts of this case. That is better addressed to the legislature. We do not believe courts have either inherent power or power under A.R.S. § 13–4037 to impose a sentence below the statutory minimum.

Defendant petitioned this court for review of this decision; we granted review only of the constitutional issue whether defendant's sentences are unconstitutionally cruel and unusual under the particular facts of this case.

## ANALYSIS

1. *The Statutory Sentencing Scheme*

Defendant was charged with violating A.R.S. § 13–1405, which provides:

**Sexual conduct with a minor; classifications**

A. A person commits sexual conduct with a minor by intentionally or knowingly engaging in sexual intercourse or oral sexual contact with any person who is under eighteen years of age.

B. Sexual conduct with a minor under fifteen years of age is a class 2 felony and is punishable pursuant to A.R.S. § 13–604.01. Sexual conduct with a minor fifteen years of age or over is a class 6 felony.

■ The fact that a minor under age 18 consents to sexual intercourse is not a defense under the statute. *State v. Fristoe*, 135 Ariz. 25, 30, 658 P.2d 825, 830 (App. 1982). The statute differentiates between an offense with a minor between the ages of 15 and 18, and an offense with a minor younger than 15, in classifying the former

as a class 6 felony and the latter as a class 2 felony.

Because both girls engaged in consensual conduct with defendant before their 15th birthdays, however, these offenses were designated class 2 felonies, and the court was required to apply the more stringent sentencing provisions of the dangerous crimes against children act. *See* A.R.S. §§ 13–1405; 13–604.01. Under that sentencing scheme, the mandatory minimum sentence for the first offense is 15 years, the presumptive term is 20 years, and the maximum term is 25 years. A.R.S. § 13–604.01(A), (D). Defendant would not be eligible for probation or early release until the full sentence is served. A.R.S. § 13–604.01(E). Because the first offense is a "predicate felony" that enhances the sentence for the second offense, *see* A.R.S. § 13–604.01(K)(2), the sentencing range for the second offense increases to a mandatory minimum term of 25 years, a presumptive term of 30 years, and a maximum term of 35 years. A.R.S. § 13–604.01(A), (D). The statute also requires that the second sentence be consecutive to the first, A.R.S. § 13–604.01(J), with no possibility of early release until every day of both sentences has been served. A.R.S. § 13–604.01(E).

The practical effect of these sentencing provisions is that defendant, having received the *minimum* sentences within the trial court's discretion on both counts, must serve 40 years in prison for these two offenses. He would be 64 years old before he could entertain the possibility of release.

2. *Cruel and Unusual Punishment: Solem v. Helm Analysis*

Defendant challenges as cruel and unusual punishment the sentencing provisions of A.R.S. § 13–604.01 only as applied to the facts of his case. In particular, he challenges the mandatory minimum sentences of 15 years for the first offense and ·25 years for the second offense as grossly disproportionate to his crimes involving participation in nonviolent, nonincestuous, heterosexual, and consensual sexual intercourse with two willing post-pubescent teenagers. He does not challenge the fa-

cial validity of the statute as applied to other, more heinous crimes against children under different circumstances.

The power to define crimes and to provide for their punishment is one held by the legislature. *Rummel v. Estelle*, 445 U.S. 263, 284–85, 100 S.Ct. 1133, 1144–45, 63 L.Ed.2d 382 (1980); *State v. Marquez*, 127 Ariz. 98, 103, 618 P.2d 592, 597 (1980). As a reviewing court, we must give "substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes...." *Solem v. Helm*, 463 U.S. 277, 290, 103 S.Ct. 3001, 3009, 77 L.Ed.2d 637 (1983). However, the fact that the legislature enacts a punishment does not conclusively establish its constitutional validity; the eighth amendment prohibition against cruel and unusual punishment is a limit on the legislature's power to mandate penalties. *State v. Mulalley*, 127 Ariz. 92, 95, 618 P.2d 586, 589 (1980). If we find a mandatory penalty so severe "as to shock the conscience of society," we must find it cruel and unusual. *State v. Davis*, 108 Ariz. 335, 337, 498 P.2d 202, 204 (1972). We judge whether the moral sense of the community is shocked by whether the punishment is overly severe or disproportionate to the crime. *State v. Taylor*, 82 Ariz. 289, 294, 312 P.2d 162, 166 (1957). We analyze such challenges on a case-by-case basis, according to the circumstances of the particular crime, the defendant's personal culpability, and by the perceptions of contemporary society at the time the decision is rendered rather than by our own standards. *See generally Mulalley, Taylor.*

▇ The United States Supreme Court has enunciated a 3–prong test to determine if a sentence is so disproportionate to the crime as to violate the eighth amendment as cruel and unusual punishment. *See Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). The *Solem* analysis requires us to examine: (1) the gravity of the offense and the harshness of the penalty; (2) a comparison of other sentences imposed in the same jurisdiction for more serious crimes; and (3) a comparison of sentences in other jurisdictions for the

same crime. 463 U.S. at 292, 103 S.Ct. at 3010. This court previously utilized the same factors, even before *Solem v. Helm* articulated them, in deciding when a punishment is unconstitutionally cruel and unusual:

In evaluating the proportionality of a criminal sanction, we will consider not only the nature of the crime and of the offender, ... but we will compare it with punishments for the same crime in other jurisdictions and for other crimes within our own jurisdiction. Because the "enactments of legislative bodies ... serve as some index of community standards and values," ... they help give objective content to the "conscience of society." In comparing the sentence actually imposed with sanctions provided in other jurisdictions, we do not, of course, seek to conform our statutes "to the 'majority rule' or the least common denominator of penalties nationwide." ... Rather we seek evidence of what sanctions are currently considered acceptable in our society for the crime considered.

*Mulalley*, 127 Ariz. at 96, 618 P.2d at 590. We previously applied the *Solem* analysis to uphold sentences imposed under A.R.S. § 13–604.01 for other dangerous crimes against children. *See State v. Jonas*, 164 Ariz. 242, 792 P.2d 705 (1990); *State v. Taylor*, 160 Ariz. 415, 422–23, 773 P.2d 974, 981–82 (1989). Our court of appeals has also applied the *Solem* factors to decide eighth amendment attacks against sentences for crimes against children. *See State v. Byrd*, 160 Ariz. 282, 284, 772 P.2d 1135, 1137 (App.1988); *State v. Smith*, 156 Ariz. 518, 525–26, 753 P.2d 1174, 1181–82 (App.1987); *State v. Crego*, 154 Ariz. 278, 280, 742 P.2d 289, 291 (App.1987). We now determine whether the eighth amendment is violated by applying the mandatory sentencing provisions of A.R.S. § 13–604.01 to this particular defendant under the specific facts of this case.

A. Gravity of the Offense and Harshness of the Penalty

▮ In determining the gravity of the offense, we must examine the type of harm threatened or inflicted and the level of defendant's culpability, measured by the seriousness of the crime, against whom it was committed, and its level of violence. *Solem*, 463 U.S. at 292–93, 103 S.Ct. at 3011–12; *Jonas*, 164 Ariz. at 247, 792 P.2d at 710.

In enacting the harsh penalties of the dangerous crimes against children act, the legislature determined that crimes against children are among the most serious crimes in our society. By providing lesser penalties for those crimes against children who have reached the age of 15, the legislature also determined that crimes against children under age 15 are more serious crimes than those against older children. This "line-drawing" functioning is properly the legislature's. *See Jonas*, 164 Ariz. at 248, 792 P.2d at 711. Additionally, by not providing the defense of consent to sexual conduct with a child younger than 18, the legislature declared that, in its judgment, children below the age of majority are incapable of making a mature decision to engage in sexual conduct. *See Fristoe*, 135 Ariz. at 30, 658 P.2d at 830 ("When a person has participated in sexual conduct with a minor, he is equally guilty of the crime whether he forced himself upon the minor or whether he succeeds in persuading the minor to allow the sexual act to take place"). *But see State v. Puig*, 154 Ariz. 624, 628–29, 744 P.2d 725, 729–30 (App.1987) (although consent is not at issue if minor is under 15, where minor is older than 15 and defendant reasonably believes the minor to be over 18, consent will be a defense to a sexual abuse charge).

Although the minor's consent will not decriminalize the sexual conduct, that consent is relevant to our inquiry into the gravity of the offense. In this case, both minors were close to the maturity line that the legislature has drawn for less serious offenses. According to their testimonies, both were willing participants in defendant's conduct. Defendant used no violent force or threats against them. Neither girl was physically injured or testified to any emotional trauma. Under these circumstances, we must certainly consider these offenses less grave than the others punish-

able under the same statutory scheme: second degree murder, sexual assault, taking a child for the purposes of prostitution, child prostitution, involving or using a minor in drug offenses, aggravated assault, molestation of a child, sexual exploitation of a minor, child abuse, or kidnapping. *See generally* A.R.S. § 13–604.01.

Additionally, we must consider the minors' proximities to their 15th birthdays. Although the legislature may be forced to draw a "bright line" at a particular age (in this case, at the age of 15) in distinguishing between class 6 and class 2 sexual conduct felonies, a reviewing court can look at a more graduated line, depending on the nature of the individual offense, in deciding the proportionality of the punishment to the crime. Thus, although the fact that both consenting girls were close to their 15th birthdays cannot be used to reduce the crimes from class 2 felonies to class 6 felonies, the punishment imposed for those harsher class 2 felonies must be proportionate to these individual offenses. And although the legislature has determined that a minor's "consent" to sexual conduct does not excuse its commission, certainly the punishment for consensual sexual conduct with a minor over 14½ years old should be closer to the punishment for sexual conduct with a 15–year–old than to punishment for sexual conduct with a 2–year–old. We thus examine what punishment defendant would have received if the minors were 15.

If Mary and Susan had been two months and six months older, respectively, defendant would have faced sentencing for two counts of a class 6 felony for sexual conduct with a minor 15 years of age. The range of sentencing for the *first* offense would have been a minimum term of 9 months, a presumptive term of 1.5 years, and a maximum term of 1.875 years. *See* A.R.S. §§ 13–701(C)(5), –702(A). The trial court would have had discretion to place defendant on probation and to designate the offense as a class 1 misdemeanor upon successful completion of that probation. *See* A.R.S. § 13–702(H). If imprisoned, defendant would have been eligible for early release after one-half the sentence had been served. The range of sentencing for

the *second* offense, as a repetitive felony under A.R.S. § 13–604(H), would have been a minimum term of 1.5 years, a presumptive term of 2.25 years, and a maximum term of 3 years. *See* A.R.S. §§ 13–604(A), –702(H). Defendant would not have been eligible for probation for the second offense, but would have been eligible for early release after one-half the sentence had been served. *See* A.R.S. § 13–604(A). Defendant's terms could have been imposed either consecutively or concurrently, within the trial court's discretion. *See* A.R.S. § 13–708. The sentences defendant actually received were significantly more harsh.

As to defendant's personal culpability, the record indicates that he was an "immature" young man who associated with a younger peer group because of his emotional insecurities, which included a pending divorce after marriage at a young age. He had no prior felony record and no history of assaulting young children. No evidence was presented that he intended to harm these girls, either physically or emotionally. But for his age of 23, this situation would be similar to others in which we have recognized a defendant may have less culpability in a crime resulting from a teenage romance:

> We do not for a moment undertake to minimize the wrong done to the minor child or to in any degree condone it. But we feel that the wrong may be ascribed more to the follies of youth in this era of confusion and frustration than to a wicked and depraved heart.

*State v. Telavera,* 76 Ariz. 183, 187, 261 P.2d 997, 1000 (1953) (Phelps, J.).

We must also recognize that sexual conduct among post-pubescent teenagers is not uncommon. Other courts have taken such notice:

> It is a fact that many young people, male and female, engage in sexual intercourse. In 1976, 2.7% of all 16–year–old girls in the United States, and 6.4% of all 17–year–olds, had borne at least one child. U.S. National Center for Health Statistics, Vital Statistics of the United States, Table 1–17 (1978). About half of

these children were illegitimate. *Id.*, Table 1–32. These statistics, including those on abortions (331 reported for every 1,000 live births, U.S. Department of Commerce, Bureau of the Census, Statistical Abstract of the United States 56 (1977)), indicate that a great number of unmarried 15– and 16–year–olds have engaged in sexual intercourse resulting in pregnancy and suggest that a greater number have done so without pregnancy.

Without applauding the sexual permissiveness of the times, we can only note that in the social context of the times this type of offense between young people is committed many times without criminal prosecution and that, in ordinary sentencing practice, is not regarded as so serious as to require imprisonment. *State v. Sepulvado*, 367 So.2d 762, 771 (La.1979).

Measuring the gravity of the offenses in this context, we must compare the harshness of the penalty. The legislature has imposed mandatory minimum consecutive sentences of 15 and 25 years for the first and second acts of consensual sexual conduct with a minor, with no possibility of early release. The trial court thus had no discretion to reduce the penalty according to the individual circumstances that indicated a less serious offense or a less culpable defendant. Defendant, with no prior felony history, has received a 40–year penalty for sexual conduct with two consenting post-pubescent teenagers. The broad application of the statute to encompass this situation results in a penalty grossly out of proportion to the severity of the crime. Although such a harsh penalty may be justified in the context of other, more heinous crimes included within the sentencing scheme, it is not justified under the specific circumstances of this case.

### B. Sentences Imposed for Other Crimes in Arizona

We next examine the sentences imposed in Arizona on defendants who commit crimes more serious than this defendant's. *Solem*, 463 U.S. at 292, 103 S.Ct. at 3010; *Jonas*, 164 Ariz. at 249, 792 P.2d at 712.

We have previously disapproved the practice of comparing only those crimes encompassed within the challenged sentencing statute to conclude that the punishment is proportionate because all crimes within the statutory scheme receive the same penalties. *See Jonas*, 164 Ariz. at 249–250, 792 P.2d at 712–713, disapproving the analysis in *State v. Smith*, 156 Ariz. at 526, 753 P.2d at 1182, and *State v. Crego*, 154 Ariz. at 280, 742 P.2d at 291.

However, a comparison of the other crimes punishable under the same mandatory sentencing provisions of A.R.S. § 13–604.01 is helpful in this case to show that more serious offenses do not receive any greater punishment. For example, second degree murder, forcible sexual assault, taking a child for the purposes of prostitution, or involving a child in a drug offense are all considered first degree crimes against children, subject to the same mandatory minimum sentences of 15 and 25 years that defendant received. A.R.S. § 13–604.01(A), (D). More potentially serious crimes than those committed here, such as aggravated assault, child molestation, child abuse, or kidnapping, are subject to a lesser minimum sentence of 12 years for the first offense and 23 years for the second offense. *See* A.R.S. § 13–604.01(B), (D).

Other more serious crimes that do not involve children similarly receive lesser penalties than those mandated in this case. Class 2 felonies not involving a dangerous weapon or threatened physical injury are punishable for a first offense with a minimum term of 5.25 years, a presumptive term of 7 years, and a maximum of 14 years, with early release potentially available after only half the sentence has been served. A.R.S. §§ 13–701, –702. Such first-time offenders are eligible for probation, or, if imprisoned, can earn early release credits of 1 day for each 2 days served. A second offense carries a minimum term of 7 years, a presumptive term of 10.5 years, and a maximum of 21 years, with early release potentially available after two-thirds of the sentence has been served. A.R.S. §§ 13–701, –702, –604(B). The first and second sentences are pre-

sumed to run consecutively but the trial court has discretion to make them concurrent by stating its reasons on the record. A.R.S. § 13–708. Included within this scheme of punishment for class 2 felonies are the following crimes, all potentially more serious than the offenses committed by this defendant: kidnapping, A.R.S. § 13–1304; sexual assault of an adult, A.R.S. § 13–1406; first degree burglary of a residential structure, A.R.S. § 13–1508; and arson of an occupied structure, A.R.S. § 13–1704. Additionally, manslaughter, a class 3 felony, A.R.S. § 13–1103, is punishable with a minimum sentence of 3.75 years, a presumptive term of 5 years, and a maximum term of 10 years. A.R.S. §§ 13–701(C)(2), –702(B).

We also compare the circumstances under which other defendants have been subjected to the same mandatory sentencing scheme. In *State v. Taylor*, we upheld an aggregate prison term of 2,975 years for 85 counts of dangerous crimes against children. 160 Ariz. 415, 773 P.2d 974 (1989). In that case, the defendant performed and photographed various sexual acts with children aged from 18 months to 8 years old, and many other unidentified small children. He also had a prior criminal history of sex crimes with young children in two other states. We recognized the "irreparable harm which he has caused to the normal development of numerous children," and his inability "to control his proclivity for sexual conduct with children" as important factors justifying the harshness of the sentence. *Taylor*, 160 Ariz. at 423, 773 P.2d at 982. In *State v. Crego*, the court of appeals upheld two consecutive 20–year prison terms for a defendant who molested 3 different victims under age 15 a few months after he had been released from prison for a similar offense, and while he was on parole. 154 Ariz. at 279, 742 P.2d at 290. In *State v. Smith*, the court of appeals also upheld a mandatory prison sentence of 91 years for a defendant who repeatedly molested a 10–year–old boy and photographed the numerous incidents on approximately 60 occasions. 156 Ariz. at 520, 753 P.2d at 1176. Defendant also points out other cases in which harsh sen-

tencing provisions were appropriately applied in situations involving repeated and cruel sexual offenses against small children. *See, e.g., State v. Cummings*, 148 Ariz. 588, 716 P.2d 45 (App.1985) (defendant, a scoutmaster, performed multiple acts of oral and anal sex on 12– to 13–year–old male victims; was sentenced to 5 concurrent prison terms ranging from 7 to 15.75 years); *State v. O'Neill*, 117 Ariz. 343, 572 P.2d 1181 (1977) (defendant, while baby-sitting, molested a two-year-old infant, resulting in a tear between her vagina and rectum; was sentenced to 20 years to life). These and other cases stand in stark contrast to the circumstances under which this defendant was sentenced in this case.

We conclude that a comparison of the punishments imposed for other crimes in Arizona reveals the disproportion with which defendant was sentenced under these factual circumstances.

### C. Sentences Imposed for the Same Crime in Other States

We also examine the punishment imposed for the same crime in other jurisdictions. *Solem*, 463 U.S. at 292, 103 S.Ct. at 3010. This comparison is difficult because the offenses defendant committed are chargeable as a broad variety of crimes with varying punishments. However, we have attempted to compare penalties for the crimes closest to those committed here: consensual, nonincestuous, heterosexual intercourse with a 14–year–old.

Additionally, we compare each of defendant's sentences individually, keeping in mind that the 15–year sentence was imposed for a first offense, and that the 25–year sentence was imposed for a second offense. We also consider only those sentences imposed for a defendant with no prior felony convictions, other than the first offense used as an enhancement factor for the second offense. Our focus is necessarily on the mandatory minimum sentences imposed in other jurisdictions, because that is what defendant received here. We do not consider significant the state's argument that defendant could have received maximum sentences in other juris-

238

dictions greater than the minimums imposed in this case, because the record clearly indicates that the trial court did not find aggravating factors justifying maximum sentences under these circumstances.

### (1) *15–year Sentence for First Offense*

In 10 jurisdictions, defendant's offenses would either not be a crime or would be punishable only as a misdemeanor with a sentence of less than one year and/or a fine.[4] For a *first* felony offense in the remaining jurisdictions, defendant would have faced a minimum penalty of one, two, or three years,[5] with probation often available. Thus, our statute is unique among all jurisdictions in that it imposes a minimum mandatory term of 15 years, which is 5 times higher than that imposed in any other jurisdiction. In all jurisdictions but Arizona, the sentencing judge has a wide range of discretion in imposing a sentence at the bottom of the statutory range that fits the individual circumstances of the crime. Although the *maximum* allowable sentence in some jurisdictions would have fallen within the range of sentencing provided for a first offender under A.R.S.

§ 13–604.01(A), in no jurisdiction would the sentencing judge be *required* to impose a sentence of more than 3 years for the identical offense. Thus, our legislature has mandated a penalty potentially disproportionate to an individual criminal act or defendant. *See* J. Howe, *Thoughts on Mandatory Sentencing*, Ariz.Bar J. June–July 1985, at 24–25.

Such potential disproportionality is not enough to allow us to find defendant's sentences cruel and unusual. *See State v. Taylor*, 160 Ariz. 415, 773 P.2d 974 (1989) ("Although on the national spectrum Arizona deals with crimes against children more severely than many other states, '[t]he Eighth Amendment is not violated every time a state reaches a conclusion different from a majority of its sisters over how to best administer its criminal laws.' *Spaziano v. Florida*, 468 U.S. 447, 464, 104 S.Ct. 3154, 3164, 82 L.Ed.2d 340, 355 (1984)"). Such potential differences in sentencing are "a mark of federalism, not unconstitutionality." *State v. Bishop*, 717 P.2d 261, 272 (Utah 1986).

In this case, however, the potential disproportion between the sentences defen-

---

**4.** *See* Ark.Stat. § 5–14–106 (third degree carnal abuse, a class A misdemeanor); Cal.Penal Code § 261.5, 264 (unlawful sexual intercourse); Ga. Crim.Code § 26–2010 (fornication); Haw.Rev. Stat. § 707–732 (sexual abuse in the third degree); Ill.Crim.Code § 11–4.1 (contributing to the sexual delinquency of a child); Md.Ann. Code § 27–464C (fourth degree sexual offense); Mo.Rev.Stat. § 566.030 (not a felony; age of consent is 14); Pa.Stat.Ann. § 18–3122 (not a felony; age of consent is 14); S.C.Code Ann. § 16–3–655 (not a crime; age of consent is 14); W.Va.Code Ann. § 61–8B–9(a) (sexual abuse in the third degree).

**5.** Felony penalties for a *first* offense in other jurisdictions include the following sentencing ranges: Ala.Code § 13A–6–62 (2 to 20 years); Alaska Stat. §§ 11.41.434, 12.55.125 (1 to 10 years); Colo.Rev.Stat. §§ 18–3–403, 18–1–105 (2 to 8 years); Conn.Gen.Stat. § 53a–71(a)(1), 53a–35a (1 to 10 years); Del.Code Ann. tit. 11 §§ 773, 4205 (3 to 30 years); Fla.Stat.Ann. §§ 800.04, 775.082 (1 to 15 years); Idaho Code §§ 18–6101, 18–6104 (1 year to life); Ind.Code Ann. §§ 35–42–4–3(c), 35–50–2–6 (2 to 8 years); Iowa Code § 709.4 (1 to 10 years); Kan.Crim. Code Ann. §§ 21–3503, 21–4501 (3 to 20 years); Ky.Rev.Stat.Ann. § 510.060 (1 to 5 years); La. Rev.Stat.Ann. § 14:80 (1 to 10 years); Me.Rev.

Stat.Ann. tit. 17–A, §§ 254, 1252(2)(D) (1 year); Mass.Gen.Laws Ann. Ch. 265, § 23 (1 year to life); Mich.Comp.Laws § 28.788(4)(a) (1 to 15 years); Minn.Stat.Ann. § 609.344(1)(b)(2) (1 to 15 years); Miss.Code Ann. § 97–5–21 (1 to 10 years); Mont.Code Ann. § 45–5–503(3)(a) (2 to 40 years); Neb.Rev.Stat. § 28–319 (1 to 50 years); Nev.Rev.Stat. §§ 200.364(3), 200.368(1) (1 to 10 years); N.H.Rev.Stat.Ann. §§ 632–A:3, 651:2 (1 to 7 years); N.J.Rev.Stat. §§ 2C:14–2(c)(5), 2C:43–6, a(2) (2 to 10 years); N.M.Stat. Ann. §§ 30–9–13(B), 31–18–15 (1 to 2 years); N.Y.Penal Law §§ 130.25, 70.00, subd. 2(e) (1 to 4 years); N.C.Gen.Stat. §§ 14.202.1, 14–1.1(a)(8) (1 to 10 years); N.D.Cent.Code §§ 12.1–20–03, 12.1–32–01, subd. 3 (1 to 15 years); Ohio Rev. Code Ann. §§ 2907.04, 2929.11(D)(1) (1 to 2 years); Okla.Stat.Ann. §§ 1114(B), 1116 (1 to 15 years); Or.Rev.Stat. §§ 163.355, 161.605 (1 to 5 years); R.I.Gen.Laws §§ 11–37–6, 11–37–7 (1 to 5 years); S.D.Codified Laws § 22–22–1(5) (1 to 15 years); Tenn.Code Ann. § 39–2–605 (1 to 5 years); Tex.Penal Code Ann. § 22.011 (2 to 20 years); Utah Code Ann. §§ 76–5–401(1), 76–3–203(3) (1 to 5 years); Vt.Stat.Ann. tit. 13 § 3252 (1 to 20 years); Wash.Rev.Code §§ 9A.44.079, 9.94A.310, table 1 (1 to 5 years); Wis.Stat.Ann. § 940.225(2)(e) (1 to 10 years); Wyo.Stat. §§ 6–2–304, 6–2–306(a)(iii) (1 to 5 years); D.C.Code Ann. §§ 22–2801, 24–203 (1 year to life).

dant received and those sentences actually imposed on other similarly situated defendants in other jurisdictions is actual. Defendant has supplied us with a myriad of examples in the published case law of other jurisdictions. A few representative citations illustrate his point: *Diefenderfer v. State,* 745 P.2d 556 (Wyo.1987) (defendant pleaded guilty to third degree sexual assault of a girl under 14; the execution of his sentence of 3 to 5 years suspended and 4 years probation imposed); *State v. DeJesus,* 10 Conn.App. 591, 524 A.2d 1156 (1987) (defendant pleaded guilty to second degree sexual assault of a 14–year old; sentence of 5 years upheld); *State v. La Borde,* 234 La. 28, 99 So.2d 11 (1958) (defendant convicted of carnal knowledge of 14–year old; sentenced to one year, 9 months); *State v. Smart,* 247 La. 174, 170 So.2d 365 (1965) (defendant convicted of carnal knowledge of a 13–year old; sentenced to 3 years); *State v. Rodriguez,* 179 N.J.Super. 129, 430 A.2d 957 (1981) (defendant convicted of sexual assault of a 13–year old; sentenced to 4 years); *State v. Newell,* 82 N.C.App. 707, 348 S.E.2d 158 (1986) (defendant convicted of taking indecent liberties with a consenting child between 13 and 16; sentenced to 3 years); *State v. Hartman,* 145 Wis.2d 1, 426 N.W.2d 320 (1988) (defendant convicted of statutory rape of a 14–year old; sentenced to a term of not more than 3 years, but suspended and defendant placed on probation with 6 months in county jail work release program). Additionally, defendant's appellate counsel has avowed to the court that he "has diligently searched two centuries of case law of each of our 50 sister states. This required the review of just over 2,600 cases. Not one case was found where a similarly situated defendant received an aggravated sentence remotely comparable to that imposed as a mandatory minimum upon Mr. Bartlett."

Given this authority, we conclude that the mandatory minimum sentence imposed on defendant for his *first* offense was dis-

proportionate to sentences received by similarly situated defendants in other jurisdictions.

#### (2) *25–year sentence for second offense*

A comparison of the 25–year mandatory minimum sentence defendant received for the *second* offense with those imposed in other jurisdictions is complicated by the enhancement of defendant's second sentence because the first count was treated as a prior predicate felony. Most jurisdictions punish repeat offenders more stringently, and enhancement of penalties on the basis of prior offenses has been consistently upheld against eighth amendment attacks. *See, e.g., Rummel,* 445 U.S. at 276, 100 S.Ct. at 1140; *Cocio v. Bramlett,* 872 F.2d 889, 893 (9th Cir.1989). However, we are mindful that the legislature, in requiring a 25–year minimum sentence for a second offense, implicitly assumed that it was enhancing a constitutionally proportionate minimum sentence of 15 years for a first offense. We have already found the minimum sentence for the first offense to be disproportionate to the facts of this case. Additionally, the "prior" felony in this case was one for which defendant was simultaneously tried and sentenced with the second offense, a factor not existing in other jurisdictions. *See* A.R.S. § 13–604(H).

Also complicating our analysis is the mandatory consecutive nature of the two sentences, along with the absence of the availability of parole. We have previously refused to find the *consecutive* nature of two sentences for two separate crimes to be a factor that would render the second sentence disproportionate. *Jonas,* 164 Ariz. at 249, 792 P.2d at 712. We thus do not consider that factor here.[6] Nonavailability of parole, however, is a factor in determining proportionality, although the absence of parole, in itself, does not make a sentence disproportionate. *Solem,* 463 U.S. at 297 and n. 24, 103 S.Ct. at 1151 and n. 24; *Jonas,* 164 Ariz. at 249, 792 P.2d at

---

6. We do not hold, however, that we would never consider the requirement of consecutive sentences to be a factor in determining proportionality. This is not, for example, a case in which consecutive sentences were imposed on a defen-

dant who engaged in one single course of conduct that resulted in separate repetitive crimes with consecutive sentences. In such a case, the consecutive nature of the sentences would perhaps be a factor in deciding proportionality.

712. In this case, the absence of parole availability requires us to consider that defendant will serve the entire 25–year sentence for the second offense.

Despite these difficulties, a comparison of what penalties defendant would face for a second offense in other jurisdictions, although not as clear as the comparison for a first offense, compels the conclusion that defendant would be subject to a much lighter minimum mandatory sentence for his second offense in all but one state.

In Nebraska, defendant would be subject to a statutory range of 25 to 50 years for a second conviction of sexual assault involving a consenting child less than 16 years old, and would not be eligible for parole. Neb.Rev.Stat. § 28–319(1)(c), (3). However, as the United States Supreme Court noted in *Solem v. Helm*, a finding that a defendant could have received an identically harsh sentence in one other state is also a clear indication that he "could *not* have received such a severe sentence in 48 of the 50 States." 463 U.S. at 299, 103 S.Ct. at 3014 (emphasis added). Furthermore, we have not been advised by the state of any defendant charged in Nebraska with offenses similar to Bartlett's actually receiving such a harsh sentence. Rather, the published cases that we have found challenging the mandatory Nebraska sentence for a second offense have involved more heinous offenses, including forcible rape with serious physical injuries to the victim. *See, e.g., State v. Brand,* 219 Neb. 402, 363 N.W.2d 516 (1985) (defendant received 35–year sentence for his second conviction of first-degree sexual assault involving the use of force; sentence found not disproportionate to crime). Under these circumstances, we cannot find the 25–year mandatory minimum sentence for defendant's second offense to be proportionate merely on the basis of the Nebraska statute.

Except for Nebraska, no other jurisdiction imposes a mandatory minimum sentence of more than 10 years for a second offense similar to defendant's. In no jurisdiction did we find the particularly harsh combination of provisions present here, including both mandatory consecutive sentencing and nonavailability of parole. We must conclude, therefore, that the 25–year mandatory minimum imposed for defendant's second offense is also disproportionate to the sentences imposed on similarly situated defendants in other jurisdictions.

Based on the above analysis, we hold that defendant's sentences of 15 years for the first offense and 25 years for the second offense are disproportionate to the crimes he committed under the specific facts of this case, and thus violate the eighth amendment proscription against cruel and unusual punishment. This is a narrow holding limited to the facts and circumstances of this case. The Supreme Court has said that successful challenges to the proportionality of particular sentences are "exceedingly rare." *Solem,* 463 U.S. at 289–90, 103 S.Ct. at 3009. This is such a rare case.

### 3. *Cruel and Unusual Punishment under the Arizona Constitution*

Although this court requested additional briefing on whether defendant's sentence violated either the federal *or state* constitutional provisions prohibiting cruel and unusual punishment, neither party analyzed the state constitutional provision separately from the federal grounds.

Article 2, § 15 of the Arizona Constitution is identically worded to its federal counterpart prohibiting cruel and unusual punishment. The framers of the Arizona Constitution, "in a rare case of using the federal Constitution as a model," adopted the federal wording "cruel *and* unusual punishment" over the committee's proposed wording that neither "cruel *nor* unusual punishment" should be permitted. J. Leshy, *The Making of the Arizona Constitution,* 20 Ariz.St.L.J. 1, 85 and n. 524 (1988), citing *Journal of the [Arizona] Constitutional Convention* 463 (Con.P. Cronin Comp.1925). This deliberate adoption of the federal wording expressed the framers' intent to give legislators wide discretion in imposing methods of capital punishment. *See* S. Feldman & D. Abney, *The Double Security of Federalism: Protecting Individual Liberty Under the Ari-*

*zona Constitution,* 20 Ariz.St.L.J. 115, 122 (1988).

Here, where identically worded federal and state constitutional provisions are alleged to have been violated, when the parties do not argue that the state constitution provides greater protection than does the federal analog, and when we have already found a violation of the federal counterpart, we need not address whether defendant's sentences would have violated the Arizona constitution had they not violated the eighth amendment.

Having concluded that the sentences imposed in this case violate the eighth amendment prohibition against cruel and unusual punishment, we do not address whether they violate art. 2, § 15 of the Arizona Constitution.

## DISPOSITION

█ In his petition for review, defendant argues that we should reduce his sentence to one more proportionate to his crime pursuant to our authority to reduce excessive sentences under A.R.S. § 13–4037(B), which provides:

If, in its opinion, the conviction is proper but the punishment imposed is greater than under the circumstances of the case ought to be inflicted ... the supreme court shall impose any legal sentence, not more severe than that originally imposed, which in its opinion is proper. ...

The ability to impose "any legal sentence" necessarily implies that we are limited to reducing an excessive sentence to one within the statutory range enacted by the legislature, assuming that range is constitutional. *See Wahl v. State,* 39 Ariz. 62, 3 P.2d 1052 (1931); *State v. Gourdin,* 156 Ariz. 337, 751 P.2d 997 (App.1988) (a sentence not authorized by law is illegal). Indeed, in prior cases in which we have reduced an excessive sentence under authority of A.R.S. § 13–4037 or its predecessor, A.R.S. § 13–1717, we have imposed a sentence within the range of sentencing provided by the legislature. *See, e.g., State v. Telavera,* 76 Ariz. 183, 261 P.2d 997 (1953) (excessive sentence of 10 to 20 years reduced to 7 to 10 years); *State v. Seelen,*

107 Ariz. 256, 485 P.2d 826 (1971); *State v. Flores,* 108 Ariz. 231, 495 P.2d 461 (1972); *State v. Waldrip,* 111 Ariz. 516, 533 P.2d 1151 (1975).

In this case, however, we hold that the statutory range of sentencing under A.R.S. § 13–604.01 cannot constitutionally be applied to defendant's crimes under the facts and circumstances of this case. We therefore have no available "legal" sentence within the range of A.R.S. § 13–604.01 to impose on defendant.

The state argues that if we find defendant's sentences unconstitutionally cruel and unusual, "appellant must be set free, as he has committed a crime for which there would be no punishment." The state bases its position on the assumption that the underlying substantive offense of sexual conduct with a minor, prohibited by A.R.S. § 13–1405, is so "inextricably united" with the sentencing provisions of A.R.S. § 13–604.01, that sentencing defendant under any other provision of the law would "undermine the intent of the entire statutory scheme." We cannot agree with this proposition.

We do not invalidate defendant's convictions for two counts of sexual conduct with a minor under age 15. Such offenses have been validly designated class 2 felonies by the legislature. Neither do we hold the sentencing provisions of A.R.S. § 13–604.01 unconstitutional as applied to other defendants under different circumstances. We merely hold that the sentencing provisions of A.R.S. § 13–604.01, which are more stringent than those applied to other class 2 felons, cannot be applied constitutionally to this defendant under these facts and circumstances. The result is to bar application of those provisions to this case, leaving defendant to be sentenced the same as any other class 2 felon to whom the provisions of A.R.S. § 13–604.01 would not apply. Thus, under the remaining statutory range provided for class 2 felonies in A.R.S. §§ 13–701 and –702, defendant could be sentenced within the range that would include, for the *first* offense, a minimum term of 5.25 years, a presumptive term of 7 years, and a maximum term of 14 years, of

which he would have to serve at least one-half before any possible release. As a first-time nondangerous offender, he would be eligible for probation. For the *second* offense, defendant's sentence could be enhanced by the first offense, *see* A.R.S. § 13–604(H), within the range that would include a minimum term of 7 years, a presumptive term of 10.5 years, and a maximum term of 21 years. *See* A.R.S. § 13–604(B). Defendant would not be eligible for probation for the second offense, and would have to serve at least two-thirds of any sentence imposed before release. A.R.S. § 13–604(B). Defendant's sentences would run consecutively unless the trial court stated on the record its reasons for imposing concurrent sentences. A.R.S. § 13–708.

Such a sentencing scheme can be applied validly to this defendant as a class 2 felon. This wide discretionary range of sentencing will enable the trial court to proportionately tailor the harshness of the penalty to the severity of the crimes. Because we cannot discern from the record before us what sentences the trial court would have imposed had it not felt bound by the mandatory provisions of A.R.S. § 13–604.01, we remand this matter to the trial court for resentencing in accordance with this opinion. We also vacate that portion of the court of appeals memorandum decision that is inconsistent with this opinion.

GORDON, C.J., FELDMAN, V.C.J., and CAMERON and MOELLER, JJ., concur.